# IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | 2:06cr390 |
| ) | Electronic Filing |
| PATRICK DAVID ELLIS ) | |

## MEMORANDUM ORDER

AND NOW, this 12th day of July, 2007, upon due consideration of *pro se* defendant's motion requesting appointment of paralegal and private investigator, IT IS ORDERED that the motion [46] be, and the same hereby is, denied to the extent defendant seeks such assistance to present a motion to dismiss challenging this court's Article III jurisdiction to hear the case and the United States Attorney for the Western District's "standing" to conduct the prosecution against him and denied without prejudice to renew with specific reasons why the requested services are necessary to an adequate defense in all other aspects.

Under the Criminal Justice Act at §3006A(e)(1), the court may provide investigative, expert, or other services to a person who is financially unable to obtain those services only where the services are "necessary for adequate representation." 18 U.S.C. §3006A(e)(1). In any such request for services the defendant must set forth the specific reasons why the services are necessary for his defense, explain precisely how the services will be used to support the defendant's legal theories, and state why the work needed for the defendant's case cannot currently be performed. *Christian v. United States* 398 F.2d 517, 519 (10th Cir. 1968); *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978); *United States v. Goodwin*, 770 F.2d 631, 634 (7th Cir. 1985).

Defendant's request before the court insufficiently describes why the services of a paralegal and private investigator are necessary to the presentation of an adequate defense. There is no explanation of how *pro se* defendant intends to use a paralegal and private investigator to support his defense beyond general statements about the need for case law

research and documenting the scene of the alleged crime. The request also does not sufficiently explain why the work needed for an adequate defense cannot be performed through services already available given that the request expressly acknowledges that assistance with the locating case law has already been offered by stand-by-counsel and his office.

Moreover, to the extent *pro se* defendant has requested and intends to request such services to aid him in presenting a motion to dismiss based on this court's Article III jurisdiction to hear the case and the United States Attorney for the Western District's "standing" to conduct the prosecution, the motion must be denied because it is based on indisputably meritless legal theory. Although *pro se* defendant has latched on to the notion that to have standing in an Article III civil controversy, the party bring the action must have a concrete stake in the litigation and have suffered an injury-in-fact, he fails to appreciate the distinctions to be drawn between a criminal case and a civil controversy. And while the broad language appearing in some of the more recent Supreme Court opinions expounding on the limitations of Article III standing would appear at first brush to be irreconcilable with the traditional mechanics employed in conducting criminal prosecutions, dogmatically drawing a corollary conclusion that federal criminal prosecution is outside the jurisdictional reach of Article III is tantamount to the "absurd." See Edward Hartnett, *The Standing of the United States: How Criminal Prosecutions Show that Standing Doctrine is Looking for Answers in all the Wrong Places*, 97 Mich.L.Rev. 2239 (1999) (to reason and conclude from the current status of the Court's Article III standing doctrine that "the vast majority of federal criminal prosecutions are not 'cases' or 'controversies' and the United States lacks standing to initiate them [would,] ... [o]f course, [amount to] an absurd result."). Furthermore, while there are several approaches that might be employed to harmonize the seemingly inconsistent principles present in federal criminal prosecutions with the Court's current approach to defining the outer scope of private causes of action challenging the actions of government officials under Article III, we need not delve into that foray to discard the notion that defendant may not be prosecuted by the Justice Department for violation of federal law on the

2

junk pile of needless intellectual exercises in futility. *See id.* (noting that "Article III cannot sensibly be read to prohibit the United States from vindicating its sovereign interests in its own courts" and summarizing the various scholarly approaches that have been used to reconcile federal criminal prosecutions with the Court's current standing jurisprudence). We merely look to the text of Article III itself and the body of scholarly opinion on the topic to assure ourselves that the conclusion we have reached is the right one.

The text of Article III provides:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States ... – to Controversies between two or more States; ... between citizens of different States ....
>
> * * *
>
> The Trial of all Crimes, except in Cases of Impeachment; shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

U.S. Constitution, Article III, Section 2. To state the obvious, the founding fathers clearly contemplated prosecution of federal crimes in the courts of the United States and drafted the scope of Article III to assure that the federal judiciary would have the authority to exercise jurisdiction over such cases. The prosecution of defendant for violation of the laws of the United States presents precisely the type of case falling within the scope of that constitutional authority.

Moreover, lest there be any question about this court's authority to exercise jurisdiction over defendant's prosecution, one need only survey the vast array of authority conceding that "the term 'cases' in Article III includes criminal prosecutions, while the term 'controversies' does not." Hartnett, *The Standing of the United States: How Criminal Prosecutions Show that Standing Doctrine is Looking for Answers in all the Wrong Places*, 97 Mich.L.Rev. at 2249 & n. 56 (collecting scholarly works in support). And while one can question the ramifications of this truism on the soundness of current Article III standing doctrine, that does not change the accepted principle the "[i]n criminal cases (and perhaps more generally in Article III 'cases'), the judiciary is enforcing the sovereign's law rather than umpiring a preexisting dispute [and] [t]hus,

criminal prosecutions demonstrate that, at least when exercising jurisdiction over the 'cases' enumerated in Article III, nothing in Article III limits the use of the federal judicial power to enforcement of the rights of individuals or prohibits the use of the federal judicial power to enforce the majoritarian sovereign will." *Id.* at 2251.

Nor can the authority of the United States attorney to prosecute offenses against the laws of the United States be seriously questioned. Through the passage of the Judiciary Act of 1789 Congress long ago gave officials acting under the authority of the Attorney General exclusive authority to control the resolution of all grand jury indictments charging federal crimes and permitted this authority to be exercised within each local district. *See* Harold J. Krent, *Executive Control over Criminal Law Enforcement: Some Lessons from History*, 38 AMULR 275, 293-96 (Winter, 1989). And the congressional directive to exercise this discretionary authority continues to this day and has a direct application to defendant's prosecution. *See* 28 U.S.C. § 547(1) ( "... each United States attorney, within his district, shall – (1) prosecute for all offenses against the United States..."); *see also* 28 U.S.C. § 541(a) ("The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.").

Of course, the exercise of such authority has long been recognized as a core executive function having firm constitutional footing. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("Finally, we recognize that an agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict-a decision which has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'") (citing U.S. Const., Art. II, § 3); *Community for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986) (holding that power to decide to investigate and to prosecute "lies at the core of the Executive's duty to see to the faithful execution of the laws".); *United States v. Cox*, 342 F.2d 167, 190 (5th Cir.) (opinion of Wisdom, J.) (finding that "[t]he prosecution of offenses against the United States is an executive function within the exclusive

prerogative of the Attorney General . . ."), *cert. denied*, 381 U.S. 935 (1965); *United States v. Alessio*, 528 F.2d 1079, 1081-82 (9th Cir.) (holding that Executive's power to determine which cases will be prosecuted is rooted in Executive's constitutional duty to take care that laws of United States are faithfully executed), *cert. denied*, 426 U.S. 948 (1976). To suggest, as *pro se* defendant has implied, that the Untied States attorney needs an injury-in-fact or a personal stake in the outcome of the prosecution in order to exercise this core executive duty in addition to the constitutional authority granted by Article II is a proposition without any legislative, executive, or judicial support in the two-hundred and eighteen plus years that have passed since the passage of the Judiciary Act of 1789. In fact, the uniform consensus is to the contrary. See Hartnett, *The Standing of the United States: How Criminal Prosecutions Show that Standing Doctrine is Looking for Answers in all the Wrong Places*, 97 Mich.L.Rev. at 2251 ("In short, if--as all concede--the United States can prosecute crimes in the federal courts, then a 'case' within the meaning of Article III must include litigation that is based on nothing more than the 'harm to the common concern for obedience to law,' and the 'abstract . . . injury to the interest in seeing that the law is obeyed.'"). Given the long-standing congressional recognition of the United States attorney's constitutional obligation to prosecute offenses against the laws of the United States and the uniform scholarly acknowledgment that such Justice Department employees properly may do so pursuant to Article II's commitment to the executive branch to enforce the interest of the sovereign in seeking to vindicate the general public interest in compliance with the law, defendant's effort to utilize scarce Criminal Justice Act resources to mount a defense based on contrary principles properly is denied.

*/s/ David Stewart Cercone*
David Stewart Cercone
United States District Judge

cc:     Charles A. Eberle, AUSA

       W. Penn Hackney, AFPD

       United States Marshal's Office

       Patrick David Ellis
       Inmate #137156
       Allegheny County Jail
       950 Second Avenue
       Pittsburgh, PA 15219